**8**

### NUNN v. HUMPHREY, Warden.
### No. 220 Habeas Corpus.

District Court, M. D. Pennsylvania.
Aug. 17, 1948.

Petitioner pro se.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., and Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., for respondent.

FOLLMER, District Judge.

Petitioner's application for a Writ of Habeas Corpus, while not showing any concise point upon which he relied, alleged in substance that he was forced to sign a confession through physical violence and third degree methods, that subsequent thereto he was indicted, stood trial, " * * * but was not convicted on that charge," that the court thereupon abandoned the proceedings on that charge " * * * and, with-

out a new indictment and other due processes of law, proceeded to convict your Petitioner on a purported charge of stealing and transporting one 1947 Ford Coach automobile * * *" which had been found in his possession and which he further alleged had been stolen in Cincinnati, Ohio, and transported to Dayton, Ohio, " * * * and, hence, could not constitute a charge of Dyer Act [18 U.S.C.A. § 408]." A hearing was granted to determine whether any substantial question was involved.

The facts as they now appear are that having escaped in March 1947, from Military Barracks where he was serving a sentence for the theft of one or more cars, about May 20, 1947, he stole a 1941 Plymouth in Cincinnati, Ohio, which he sold in West Virginia about May 26, 1947, returning to Cincinnati, Ohio, where, in the same vicinity, on May 28, 1947, he stole a 1947 Tudor Ford Sedan. He was apprehended by Ohio State Police, in possession of this car, on Sunday night July 20, 1947. The State Police notified the Federal Bureau of Investigation and two of its agents interviewed him the following evening, July 21, 1947. It appears that the State Police interrogated him at some time during the intervening period about other possible state offences.[1] Upon being interviewed the following evening by two Special Agents of the Federal Bureau of Investigation, he voluntarily confessed the theft of the 1947 Ford and its transportation to West Virginia, as well as other places (during the period of May 28, 1947 to July 20, 1947), prior to his return to Ohio. With appointed counsel he came into court, waived indictment and plead guilty to an information which specifically charged the transportation of the stolen 1947 Ford. The Court Record shows that counsel had discussed the case with the defendant and was prepared to proceed. The record

[1] Transcript of Hearing June 4, 1948, at pages 16 and 17.

"Q. Why were you in the custody of the State authorities? A. I don't think that concerns this case, Mr. Counsel.

"Q. On what charge did the State authorities have you? A. I refuse to answer that question. The charge he wants me to admit was a State offence and I was not tried on that; it does not con-

cern the Federal Court.

\* \* \* \* \* \*

"Q. What did the State Police question you about after they had apprehended you? A. They were questioning me about the cars and some papers in the car.

"Q. Is it not a fact that what they were questioning you about was a robbery. A. I refuse to answer that."

shows that his counsel, on the basis of information given to him by defendant, and with very little to work on, did his best to give the court something in mitigation of sentence. There was no doubt as to the particular car involved.[2]

While the burden of proof is on petitioner to establish it, actually throughout these proceedings there is nothing which could in anywise be construed as even suggesting the possibility of a coerced plea.

Petitioner's effort, however, calls for a comment. While sentence was imposed September 18, 1947, the petition was not filed until April 23, 1948. At the time of filing his petition he alleges therein only one confession, and he at that time stated to a person not involved in these proceedings that the confession had been obtained by the police and the Federal Bureau of Investigation jointly through force.[3] At the hearing this changed to two confessions, one obtained by force at the State Police Barracks between 7:00 and 7:30 Sunday night, July 20, 1947, with the Federal Bureau of Investigation agents called in that same night about 9:30 or 10:00 o'clock, and a second confession voluntarily given to them[4] without any other state or city police present. He states that he informed the agents that he had been beaten by the police. This is supposed to have been within an hour or two after the alleged occurrence on Sunday night and that he was transferred by the agents, by reason thereof, for medical treatment, to another jail. As against his conflicting stories, the true facts as developed by credible testimony and records made in the usual course at the time, appear as follows: The Federal Bureau of Investigation agents were notified by the State Police on Sunday night that he had been apprehended. The agents were not able to interview him until the following evening, July 21, 1947, at which time they took him, without handcuffs, from the jail to a room upstairs, where they and the defendant sat down at a table, and they interviewed him. He showed no evidence of bruises or cuts, did not claim to have been improperly treated, did not ask for any medical treatment, the interview lasted about an hour, beginning about 8:15 P.M. Petitioner in the conversation readily admitted the theft of the car by 8:30 P.M., and the statement was completed between 8:30 and 9:30 P.M. The interview began with a discussion of his background and his experiences and at that time he told them his correct name was "Nunn". The statement was read to him and by him, and he

---

[2] Respondent's Exhibit No. 1 (Transcript of Proceedings filed in Criminal Case No. 2266, Western Div. Southern District of Ohio), at page 3:

"The Court: These cars we are talking about here in court, one stolen May 28, 1947, that is what he is charged with in this case, and then he was involved in the theft of another car, 1941 Plymouth, the property of Carl Hartsock, stolen from the streets of Cincinnati, and subsequently driven to Charlestown, West Virginia, where the car was sold to a used car dealer. That is what has been stated to the Court in this Record.

"Mr. Hoefling: The defendant admits the record which is listed there. It was only in mitigation or possible explanation of his conduct that I wanted your Honor to know about the death of his mother and the fact he wasn't able to get out of the Army at that time."

[3] The witness' testimony was inter alia (Transcript of Hearing June 4, 1948, at pages 38 and 39):

"* * * I had noticed that he had made a charge of coercion and of force being used to obtain this confession. At that time it interested me. I asked him who had applied this force and coercion and he said that officers of the Dayton Police at the time and the F. B. I. I specifically asked him what officers and he said he didn't recall the names, and I asked him if he was certain the F. B. I. Agents had applied this coercion and he said 'Yes,' and I asked him again if he was sure the F. B. I. Agents had taken part in this beating. This was interesting to me because I know the reputation of the F. B. I. and I told him he should be very careful in making a statement of that kind unless he was willing to go into Court and make such a statement under oath, to which he replied that he would go into Court and swear that the F. B. I. Agents took part in this beating."

[4] Transcript of Hearing June 4, 1948, at page 5:

"Q. Do you claim there was any duress exercised on you by either of these F. B. I. Agents? A. No sir, neither one of them."

made and initialed corrections therein, suggested by him. The case having been turned over to the federal agents he was in ordinary course transferred to a jail approved for federal prisoners.

After a careful appraisal of this picture it might be surmised that this angle of coercion, with some difficulty in developing it into a plausible story, and probably suggested by some of the opinions in other cases, was worked out through vivid imagination plus consultation with fellow prisoners while at the penitentiary; it is totally void of sincerity, plausibility and of truth.

The petition is denied and the Rule to Show Cause dismissed.